## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 26 2017, 7:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan B. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Marjorie Newell
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of J.W. (Minor Child), and

B.W. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

January 26, 2017

Court of Appeals Case No.
18A05-1606-JT-1396

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Trial Court Cause No.
18C02-1508-JT-11

**Crone, Judge.**

## Case Summary

B.W. ("Mother") appeals the trial court's order involuntarily terminating her parental relationship with her minor daughter, J.W. We affirm.

## Facts and Procedural History

The Department of Child Services ("DCS") initially removed four-year-old J.W. from Mother's care in September 2014 due to allegations that Mother and her then-husband were sexually and physically abusing J.W., and that Mother was using drugs and failing to provide adequate housing. Specifically, J.W. reported that Mother had touched her inappropriately and had burned her with cigarettes. Mother was subsequently incarcerated and J.W. was adjudicated a child in need of services ("CHINS") based upon Mother's admissions that she was unable to care for J.W. Although J.W. was originally placed into relative care, her placement was changed shortly thereafter to foster care.

After Mother was released from incarceration in November 2014, her visitation with J.W. was quickly suspended after J.W. expressed to caseworkers and her foster parent that she had an "extreme fear" of Mother. State's Ex. 5. The trial court entered a dispositional order in January 2015 which required Mother to complete services including a parenting assessment, a substance abuse assessment, a psychological evaluation, home-based case management, as well as additional services. Mother was also required to submit to drug screens. After services began, the trial court found that Mother continued to test positive (at least seventeen times) on her drug screens, and failed to participate in

services in such a way as to enhance her parenting skills. The record indicates that during the pendency of the CHINS proceedings, Mother continued to be unable to maintain housing, and that her psychological state was considered unstable, with high levels of anxiety, depression, and a propensity for psychosis. Mother was referred to mental health counseling as well as to an intensive outpatient substance abuse treatment program due to her history of addiction and drug abuse which included marijuana, heroin, and methamphetamine. Mother failed to complete and was dropped from the substance abuse program at the end of February 2015. Mother suffered a drug relapse in early March 2015. She began intensive substance treatment again in May 2015, but failed to complete the treatment. Mother attended only a few mental health counseling sessions. By July 2015, Mother had stopped communicating with her family case manager and was no longer participating in any services.

[4]     On August 25, 2015, DCS filed a petition to terminate Mother's parental rights to J.W. On December 2, 2015, Mother pled guilty to level 5 felony battery and level 5 felony neglect of a dependent resulting in bodily injury in which J.W. was the victim, in addition to three other unrelated felonies.[1] Mother is currently incarcerated with a projected release date of April 24, 2018, and an earliest possible release date of January 2017.

---

[1] Mother originally faced numerous charges under five separate trial court cause numbers. In exchange for Mother's guilty plea to five felonies, the State dismissed eight additional felony charges, and one misdemeanor charge.

The termination factfinding hearing was held on April 5, 2016, and the trial court issued its termination order in May 2016. In addition to extensive findings regarding Mother's failure to complete services, the trial court found that J.W. had suffered substantial physical and emotional trauma at the hands of Mother. The court found that because of J.W.'s "severe psychological trauma and the status of her therapeutic situation, neither [of J.W.'s therapists] ever recommended visitation between [J.W.] and her mother." Appellant's App. at 114. Thus, Mother had not visited with J.W. since she was originally removed from Mother's care in 2014. The trial court further found that J.W. needs a safe, stable, secure, and permanent environment in order to thrive and that Mother had shown no inclination or ability to provide J.W. with such environment.

Based upon the findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in J.W.'s removal from and continued placement outside the home will not be remedied by Mother; (2) there is a reasonable probability that the continuation of the parent-child relationship between J.W. and Mother poses a threat to the well-being of J.W; (3) termination of the parent-child relationship between Mother and J.W. is in J.W.'s best interests; and (4) DCS has a satisfactory plan for the care and treatment of J.W., which is adoption. Accordingly, the trial court determined that DCS had proven the allegations of the petition to terminate parental rights

by clear and convincing evidence and therefore terminated Mother's parental rights.  This appeal ensued.[2]

# Discussion and Decision

"The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children.  Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities."  *In re A.P.,* 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted).  "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed."  *Id.*  A petition for the involuntary termination of parental rights must allege in pertinent part:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

---

[2] J.W.'s father's parental rights were terminated by default in a separate action in June 2016.  He is not a party to this appeal.

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[8] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id*. at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[9] Mother's sole contention on appeal is that the trial court "erred in determining the State of Indiana met its burden in fully complying with Indiana Code

Section 31-35-2-4(b)(2)(B)." Appellant's Br. at 5. Specifically, Mother argues that DCS failed to prove all three statutory requirements provided in that subsection. However, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we turn to address the evidence supporting, and the trial court's conclusion regarding, only one of the three requirements.

[10]     In terminating Mother's parental rights, the trial court concluded that there is a reasonable probability that the conditions that led to J.W.'s removal and continued placement outside of Mother's care will not be remedied. In determining whether there is a reasonable probability that the conditions that led to a child's removal and continued placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to [the child's] placement and retention in foster care." *Id.* Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id.* (quoting *In re I.A.,* 934 N.E.2d 1132, 1134 (Ind. 2010) (citing *In re A.A.C.,* 682 N.E.2d 542, 544 (Ind. Ct. App. 1997))). In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's recent improvements against "'habitual pattern[s] of

conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.,* 989 N.E.2d at 1231). "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*.

[11] The evidence indicates that J.W. was originally removed from Mother's care based on allegations that Mother was sexually and physically abusing J.W., using drugs, and failing to provide adequate housing. At the time of the CHINS hearing, Mother was incarcerated on various charges and she admitted to being unable to care for J.W. After her release from incarceration, Mother's visitation with J.W. was suspended due to J.W.'s extreme fear of Mother caused by the physical and emotional trauma that Mother had inflicted upon J.W. Thereafter, despite the best efforts of the family case manager, counselors, and therapists, Mother failed to fully comply with and benefit from court-ordered services, eventually stopping her participation altogether by July 2015. Mother failed to secure stable housing or employment, and she continued to abuse drugs and engage in criminal behavior. Mother has not seen J.W. since the child's initial removal from her care and, by all accounts, Mother seemed wholly disinclined to take the necessary steps to even attempt to earn back her visitation rights. At the time of the termination hearing, Mother was again incarcerated following her convictions on multiple felonies, including crimes

committed against J.W. Mother's habitual pattern of conduct and unwillingness to change demonstrates a substantial probability of future neglect or deprivation. The record supports the trial court's conclusion that there is a reasonable probability that the conditions that resulted in J.W.'s removal and continued placement outside of Mother's care will not be remedied.

[12] As Mother does not challenge the trial court's conclusions that termination of her parental rights is in J.W.'s best interests or that adoption is a satisfactory plan for the care and treatment of J.W., we need not also address those conclusions. The trial court's termination of Mother's parental rights to J.W. is affirmed.

[13] Affirmed.

Riley, J., and Altice, J., concur.